W. C. BOSTIC, SR. AND WIFE MRS. W. C. BOSTIC, SR., DR. W. C. BOSTIC, JR., AND WIFE, MRS. W. C. BOSTIC, JR., MRS. MARGARET BOSTIC MORRIS AND HUSBAND W. L. MORRIS v. COWAN BLANTON AND WIFE MRS. COWAN BLANTON.

(Filed 11 October, 1950.)

**1. Boundaries § 5h—**

Where the owner of land sells successively a part thereof to separate parties, the calls in the secondly executed deed cannot be used to locate a call in the deed first executed.

**2. Boundaries § 3b—**

A call in a deed specified the course, with additional direction that it ran with the center of a wall 115.5 feet to a stake. The wall exists only for the last 50 feet of the distance. The wall is not plumb with the course

specified, so that while its end on the corner coincides with the corner, its other end encroaches on the course about a foot. *Held:* The course as specified controls until reaching the wall, at which point the artificial object controls, resulting in a one foot offset in the line.

**3. Adverse Possession §§ 8, 9b—**

Where there is a lappage in deeds to contiguous tracts from a common source, the grantee in the deed first executed by the common grantor has the better title, and the constructive possession of the lappage is in him and those claiming under him by *mesne* conveyances, there being no question of actual adverse possession of the lappage by either party.

**4. Boundaries § 3c—**

The rule permitting the reversal of a call in a deed for the purpose of ascertaining a corner can have no application, even in regard to the senior title of one of two contiguous tracts derived from a common grantor, when the lines and corners may be ascertained by following the calls in their regular order as set forth in the senior deed.

APPEAL by defendants from *Rousseau, J.,* February Term, 1950, RUTHERFORD. Affirmed.

Civil action to restrain a trespass and compel the removal of a wall being built by defendants on the land of the plaintiffs.

A restraining order was issued and later dissolved by Moore, J. When the cause came on for hearing in the court below, counsel waived trial by jury and agreed that the court should find the facts and render judgment thereon.

The court, after hearing the evidence, found the facts which are in substance as follows:

Susan Biggerstaff owned a tract of land in Forest City on the west side of Depot Street which included the lot now owned by plaintiffs and the contiguous lot to the south now owned by defendants. These lots faced on Depot Street. Each supposedly had a frontage of twenty feet and extended back between parallel lines to the property line of Margaret Young. However, there was a brick store on the front end of each lot with a common or party wall in the center. This wall, instead of being built along the dividing line, as it was supposed to be, angled to the north so that the rear end of the wall (50 feet from Depot Street) was about one foot over on the lot now owned by plaintiffs. If the wall was extended in a direct line to the Young property, it would, at that point, be 3½ feet over on the Bostic property according to the calls of plaintiffs' deeds. The northern lot, now owned by plaintiffs, is referred to as the first building and the southern lot, now owned by defendants, as the second building.

Susan Biggerstaff died in 1900. Sometime after her death her surviving husband and heirs at law conveyed the first building lot by deed

to P. N. Long. Thereafter, after the death of the surviving husband, said heirs conveyed the second building lot to J. F. Weathers. Plaintiffs, by *mesne* conveyances, acquired and now own the first building lot and the defendants, by *mesne* conveyances, acquired and now own the second building lot. The description contained in the several deeds in the chain of title of plaintiffs contains a call starting at a corner in the Margaret Young line 20 feet from the southern line of the public alley, point "C" on the map, as follows: "Thence south 74 east running with center of wall of the first and second building 115.5 feet to a stake in edge of sidewalk." There is no building wall at the beginning of this call.

It also contains the following stipulation: "It is understood and agreed between the parties to these presents that the said wall between the first and second building described above shall be a party wall and owned jointly between the owners of the first and second building."

The deeds in the chain of title of defendants contain the following call: "Beginning in the edge of a sidewalk on Depot Street, P. N. Long's corner, and runs North 74 deg. West with P. N. Long's line with the middle of the wall of the first and second building, 115.5 feet to Margaret Young's line." They also contain a party wall stipulation similar to that in deed to plaintiffs.

In 1948 the defendants undertook to extend the party wall in a direct line to the eastern boundary of the public alley across the rear end of the two lots. This new wall is within the bounds of the calls and distances contained in the deeds of the plaintiffs and plaintiffs allege that it is actually located on their property. They notified defendants to cease construction of said wall. Defendants temporarily stopped work thereon but after some negotiations resumed the construction of the wall. Plaintiffs thereupon applied for and obtained the restraining order issued in this cause.

There is no evidence of actual physical occupancy of the disputed land other than such as is presumed by the possession and occupancy of a part of the land embraced in the respective deeds.

The court, having found the facts in more detail than here stated, concluded that plaintiffs are the owners of the land described in their deeds as set out in finding of fact number one; and that the new building being constructed by the defendants encroaches upon the lands of the plaintiffs. It thereupon adjudged that plaintiffs are the owners of the lands described in the deeds to them, but that they are estopped to claim any part of the property embraced therein south of the old wall which was on the premises at the time the Biggerstaffs conveyed the same. The defendants excepted and appealed.

*Hamrick & Jones for plaintiff appellees.*
*Oscar J. Mooneyham and J. S. Dockery for defendant appellants.*

BARNHILL, J. The decisive question here involved is this: What is the true dividing line between the property of the plaintiffs and the property of the defendants?

It is apparent from the judgment entered the court below concluded that this dividing line as now constituted begins at a stake in the Young line 20 feet south 20 degrees west of the point of intersection of the Young line and the southern line of a public alley (point C on the map) and runs thence south 74 degrees east approximately 45½ feet to a point exactly opposite the rear end of the party wall (point F on the map), thence northerly about one foot to the center of the party wall (point G), thence in a southeasterly direction with the center of said wall to a stake on Depot Street (point D), an admitted common corner. We are inclined to the view that this is the correct conclusion and that the judgment based thereon should be sustained.

The parties claim through a common source and the plaintiffs possess the superior record or paper title. These are determinative facts which must be kept in mind in the solution of the question posed.

Resort may not be had to a junior conveyance for the purpose of locating a call in a senior deed. *Cornelison v. Hammond,* 224 N.C. 757, 32 S.E. 2d 326; *Thomas v. Hipp,* 223 N.C. 515, 27 S.E. 2d 528; *Belhaven v. Hodges,* 226 N.C. 485, 39 S.E. 2d 366. We must direct our attention solely to the deeds in the Bostic chain of title to ascertain the lines in his deeds and the property embraced therein.

The description as therein contained does not begin at the common corner. It begins at the intersection of the western line of Depot Street and the southern line of the public alley (point A). It runs thence north 74 west 114 feet to the Young line (point B), thence south 20 degrees west 20 feet to a stake (point C), thence south 74 east. So far there is no call for a natural or artificial object that would alter or vary these calls. They must be accepted as the proper bounds of plaintiffs' property to the point where the last call—south 74 east—comes in conflict with the call for the center of the brick wall. The "artificial object" call, the brick wall, is controlling to the extent of its length.

There is no evidence of actual adverse possession by defendants of the disputed land between the points G-1-C-F. Therefore, the plaintiffs and those under whom they claim have in law been in possession of this property since the unity of possession was severed by the Biggerstaffs more than 20 years ago.

Constructive possession follows the superior title. *Ownbey v. Parkway Properties, Inc.,* 222 N.C. 54, 21 S.E. 2d 900. He who has the better

title has constructive possession of all land within the bounds of his deed which is not in the actual adverse possession of another. *Wallin v. Rice, ante,* p. 371. This rule applies even when both parties claim under color of title. *Whiteheart v. Grubbs, ante,* 236.

Defendants contend, however, that their line begins at the common corner on Depot Street, Long's—now plaintiffs'—corner (point D) and runs thence with Long's line with the middle of the wall of the first and second buildings 115.5 feet to Margaret Young's line; that under this call, when the rear end of the brick wall is reached, the call should be extended in a direct line to the Young property at point 1 on the map; and that thus the common corner in the Young property is established.

If the calls in the deeds of defendants alone were involved, this might be true. We may, therefore, concede without deciding, that the dividing-line call in the defendants' deeds runs from point D on Depot Street to point 1 in the Young line as contended by them. Even so, this merely creates a lappage, and where the title deeds of two rival claimants to land lap upon each other, and neither is in the actual exclusive possession of any of the land covered by both deeds—that is, the lappage—the law adjudges the possession of the lappage to be in the one who has the better title. *Whiteheart v. Grubbs, supra.* Furthermore, to follow this procedure would constitute a reversal of the call in plaintiffs' deeds for the purpose of ascertaining their corner in the Young line. The rule prohibits such procedure even when following the lines of the senior title so long as the lines and corners may be ascertained by following the calls in the senior deed in their regular order. *Belhaven v. Hodges, supra; Cornelison v. Hammond, supra.*

There is no need to reverse any call in plaintiffs' deeds in order to fix their corner in the Young line. The beginning corner at the intersection of Depot Street and the public alley (point A) and the next corner at the intersection of the alley and the Young line (point B) are not in dispute. They may easily be ascertained by following the calls of the deeds. Then the common corner in the Young line is ascertained and fixed by continuing along the Young line south 20 west 20 feet (point C).

Neither a resort to a reversal of lines nor to a junior conveyance will be permitted to vary this result.

It is asserted, however, that the judgment of the court below breaks the course of the dividing-line call and creates an offset therein, whether the line be run by beginning at point D or point C. This is quite true. But the offset is created by operation of law as a result of the peculiar circumstances of this case. There is no brick wall from C to F. Under the law, plaintiffs have been in possession of the land described in their deeds up to this line since the unity of possession was severed more than

20 years ago. The brick wall is an artificial boundary at all times recognized by plaintiffs. They have never claimed title to and have never possessed the land to the south of this wall. Their right of entry thereon, if any, is forever barred. Thus the line from F to G is closed and the offset is created.

For the reasons stated the judgment below is

Affirmed.