CARL R. WILLIAMS, WHRENS CASEY WILLIAMS, AND MINORS. SAMUEL E. WILLIAMS, III, AND LINDA WILLIAMS, BY THEIR NEXT FRIEND, F. C. PASCHALL ¡v. NORTH CAROLINA STATE BOARD OF EDUCATION, NORTH CAROLINA WILDLIFE RESOURCES COMMISSION AND THE STATE OF NORTH CAROLINA.

(Filed 30 March, 1966.)

**1. Appeal and Error § 16—**
    Upon the granting of *certiorari*, the case is before the Supreme Court in all respects as on appeal.

**2. State § 4;   Quieting Title § 1—**
    A complaint alleging that plaintiffs are the owners of a described tract of land by record title and that the State claims an interest therein by virtue of a specified registered deed, that plaintiffs have a superior title,

and that the State's claim constituted a cloud on plaintiff's title, *held* sufficient to state a cause of action to quiet title, G.S. 41-10, and such action may be maintained against the State under the provisions of G.S. 41-10.1.

**3. Adverse Possession § 12.1—**

The State of North Carolina and its political subdivisions may acquire title by adverse possession to the same extent as an individual. G.S. 1-38 and G.S. 1-40 apply to any legal entity and not only to an individual.

**4. Adverse Possession § 21—**

In an action against the State to quiet title, allegations in the answer asserting acquisition of title under color of title by seven years' adverse possession and by adverse possession for more than twenty years under known and visible boundaries, and allegations that plaintiffs were estopped from asserting title by permitting the State to remain in open, notorious, and adverse possession of the *locus* for more than twenty years, set up a valid defense and motion to strike same is properly denied.

**5. Limitation of Actions § 2—**

Where the State and its agencies are asserting no rights deriving from their governmental status, they may assert defenses based on statutes of limitation.

**6. Adverse Possession § 20—**

Since proof of legal title to lands raises the presumption that the owner has been in legal possession thereof within twenty years before commencement of the action, it is not necessary that the complaint in a real action allege such possession within the twenty-year period, but allegations in the answer that plaintiffs had not been in possession within the twenty-year period should not be stricken on motion when defendants claim title by adverse possession. G.S. 1-39, G.S. 1-42.

**7. Adverse Possession § 21—**

In an action to remove cloud on title in which defendants claim title by adverse possession, allegations in the answer pleading G.S. 1-56 upon the assertion that plaintiffs' action accrued more than ten years prior to the commencement of the action, and that their cause of action for trespass accrued more than three years prior to the commencement of the action, G.S. 1-52, are properly stricken as irrelevant, there being no claim of damages for trespass.

**8. Limitation of Actions § 16—**

The pleading of statutes of limitation having no relevancy to the facts controverted in the pleadings is properly stricken.

MOORE, J., not sitting.

PLESS, J., took no part in the consideration or decision of this case.

ON *certiorari*, granted on defendants' petition, to review order entered by *Morris, J.*, at September 6, 1965, Session of PENDER, docketed and argued as No. 209 at Fall Term 1965.

Action under G.S. 41-10 and G.S. 41-10.1 to quiet title.

Plaintiffs, in amended complaint, alleged: They are the owners and seized in fee of a certain tract of land in Pender County described by metes and bounds and referred to as being "(o)n the East side of the Northeast branch of Cape Fear River above the mouth of Hollyshelter Creek, including part of the upper Hollyshelter Pocoson," and as containing 29,184 acres. Defendants claim an estate or interest therein by virtue of a purported deed recorded in Book 125, page 47½, Pender County Registry. The claim of defendants "is valid neither in law nor fact for the reason that the said land was granted by the State of North Carolina, and plaintiffs acquired title by *mesne* conveyances through that grant"; that plaintiffs and defendants claim said land under a common source of title and plaintiffs have the superior title; and that said claim of defendants to an estate or interest in said land adverse to the plaintiffs is a cloud upon plaintiffs' title thereto.

Defendants, State of North Carolina and two of its agencies, namely, its Board of Education and its Wildlife Resources Commission, filed a joint answer. They admit the deed recorded in Book 125, page 47½ (which is not otherwise described in either pleading), is "a part of the record title of the defendants." They deny plaintiffs have any estate or interest in any portion of the land described therein. Except as stated, defendants deny the essential allegations of the complaint.

For a further answer and defense, defendants allege they own in fee simple a tract of land in Pender and Duplin Counties described by metes and bounds and referred to as "the Angola Bay Wildlife Management Area and known locally as the Angola Bay Refuge." They allege plaintiffs' claim, if any, to any portion of the tract of land described in their further answer and defense is invalid and should be so adjudged and removed as a cloud on defendants' title thereto.

In paragraphs 3, 4, 5, 6, 7 and 9 of their further answer and defense, defendants plead, in bar of plaintiffs' right to maintain this action, the matters set forth and discussed in the opinion.

Plaintiffs moved to strike all of paragraphs 3, 4, 5, 6, 7, *8* and 9 of defendants' further answer and defense on the ground they "are irrelevant . . . and evidence in support of these allegations would be incompetent . . . on the trial of this action, and . . . plaintiffs would be prejudiced . . . if said . . . irrelevant and incompetent allegations are allowed to stand . . ."

After a hearing on plaintiffs' said motion, Judge Morris entered an order striking all of paragraphs 3, 4, 5, 6, 7 and 9 of defendants'

further answer and defense, but denying plaintiffs' motion in respect of paragraph 8 thereof.

Defendants excepted to said order and to the further order of Judge Morris that defendants' remedy for immediate review was by petition for *certiorari*. Defendants did file petition for *certiorari* which, as indicated above, was granted by this Court.

*Moore & Biberstein, Rountree & Clark and Wells & Blossom for plaintiff respondents.*

*Attorney General Bruton, Assistant Attorney General Icenhour, Staff Attorney Ray and Corbett & Fisler for defendant petitioners.*

BOBBITT, J. *Certiorari* having been granted, the case is now before us in all respects as on appeal. *Products Corporation v. Chestnutt,* 252 N.C. 269, 113 S.E. 2d 587. Whether *certiorari* was a prerequisite to an immediate appeal is now academic.

The 1957 Act (Session Laws of 1957, Chapter 514), now codified as G.S. 41-10.1, provides: "Trying title to land where State claims interest.—Whenever the State of North Carolina or any agency or department thereof asserts a claim of title to land which has not been taken by condemnation and any individual, firm or corporation likewise asserts a claim of title to the said land, such individual, firm or corporation may bring an action in the superior court of the county in which the land lies against the State or such agency or department thereof for the purpose of determining such adverse claims. Provided, however, that this section shall not apply to lands which have been condemned or taken for use as roads or for public buildings."

The allegations of plaintiffs and defendants set forth in our preliminary statement clearly imply that defendants have not "taken by condemnation" the tract of land described in the complaint. This being true, plaintiffs herein, by virtue of G.S. 41-10.1, are entitled to institute an action against defendants under G.S. 41-10. See *Shingleton v. State,* 260 N.C. 451, 133 S.E. 2d 183.

Plaintiffs herein do not allege they are either in or out of possession. Nor do they allege that defendants have trespassed upon their land. They assert they own the lands described in the complaint in fee simple and that defendants are asserting an adverse claim thereto. These allegations are sufficient to meet the minimum requirements of G.S. 41-10. *Barbee v. Edwards,* 238 N.C. 215, 221, 77 S.E. 2d 646, and cases cited.

As indicated above, it appears from the allegations of both plaintiffs and defendants that defendants do not assert they have condemned the property. Nor do defendants assert ownership by

virtue of their right of eminent domain or other attribute of sovereignty. Defendants' claims to ownership are based solely on rights and defenses available to private litigants in like circumstances.

We consider now whether the court erred in striking all or any of paragraphs 3, 4, 5, 6, 7 and 9 of defendants' further answer and defense.

In paragraphs 3 and 4, defendants alleged they had acquired title by adverse possession for more than seven years under color of title and by adverse possession for more than twenty years under known and visible boundaries. Whether these paragraphs should have been stricken involves the same question, namely, whether the State or its agencies may acquire title to real property by such adverse possession.

"The public may obtain title by adverse possession to that which it has occupied during the full statutory period. It would seem, however, that the acquisition of such title would have to be through a public or governmental entity rather than the unorganized public. Clearly, title by adverse possession may be acquired by the United States, or by a state, county, city, or other governmental entity. It is generally held that a municipal corporation is not deprived of the benefit of continuous adverse possession of land because of the public character of its corporate franchise, but that it may acquire title by adverse possession the same as an individual." 3 Am. Jur. 2d, Adverse Possession § 139; 2 C.J.S., Adverse Possession § 6; 5 Thompson on Real Property, 1957 Replacement, § 2555. Decisions supporting the quoted statement and cited texts include the following; *Lincoln Parish School Board v. Ruston College*, 162 So. 2d 419 (La.), *certiorari* denied, 164 So. 2d 354, and cases cited; *Attorney General v. Ellis*, 84 N.E. 430 (Mass.), and cases cited; *Eldridge v. City of Binghamton*, 24 N.E. 462 (N.Y.); *State v. Stockdale*, 210 P. 2d 686 (Wash.); *State v. Vanderkoppel*, 19 P. 2d 955 (Wyo.); *Stephenson v. Van Blokland*, 118 P. 1026 (Or.); *Foote v. City of Chicago*, 13 N.E. 2d 965 (Ill.).

As pertinent to the last sentence in the above quotation from American Jurisprudence 2d, the author cites, *inter alia*, the decision of this Court in *Raleigh v. Durfey*, 163 N.C. 154, 79 S.E. 434, in which the defendant-purchaser questioned the title of the plaintiff-seller (City of Raleigh) to "the market-house property . . . situated in the center of Exchange Place." It was admitted that the City of Raleigh had a perfect paper title to all of the property except a portion thereof covered by part of the market-house building. In affirming a judgment for plaintiff, which upheld its title and right to convey, this Court, in opinion by Brown, J.; said: "It is admitted that

the plaintiff has been in undisputed actual adverse possession under known and visible lines and boundaries of the entire land and property for sixty years, occupying the same and collecting the rents. Upon these facts it would seem to be plain that plaintiff has acquired an absolute title to the property. One of the methods of acquiring title to land is by adverse possession. *Mobley v. Griffin,* 104 N.C. 112. We know of no reason or authority by which a municipality is excluded from that rule and rendered incompetent to acquire title by that method."

The quoted excerpt from the opinion of Brown, J., in *Raleigh v. Durfey, supra,* is quoted with approval by Walker, J., in *Cross v. R. R.,* 172 N.C. 119, 124, 90 S.E. 14, and by Clarkson, J., in *In the Matter of Assessment against R. R.,* 196 N.C. 756, 759, 147 S.E. 301. In the first cited case, it was held that a railroad company could acquire title to land by adverse possession. In the last cited case, it was held that a municipality could acquire title to a street located upon the right of way of a railroad company by adverse possession and use thereof for such purpose.

In *Browning v. Highway Commission,* 263 N.C. 130, 139 S.E. 2d 227, Denny, C.J., after pointing out the differences between the facts in that case and those in *Kaperonis v. Highway Commission,* 260 N.C. 587, 133 S.E. 2d 464, said: "In our opinion, the evidence in the *Kaperonis* case was sufficient to have established a right of way by prescription, had the Commission not theretofore purchased the right of way from his predecessors in title."

The following is an excerpt from the opinion of Avery, J., in *S. v. Fisher,* 117 N.C. 733, 738, 23 S.E. 158: "As a rule the right to the easement in a public highway is acquired either by dedication, the exercise of the power of eminent domain, or user . . . Where the public claims title to the easement by user, however, the burden rests upon the State or its agencies, such as towns, . . . to show title by adverse possession."

Our decisions, as well as *dicta,* are in accord with the rule stated in the quotation from American Jurisprudence 2d. Paraphrasing the language of Brown, J., in *Raleigh v. Durfey, supra,* we know of no authority or reason by which the State of North Carolina or its agencies are excluded from the right to assert title by adverse possession when the circumstances would permit a private litigant to do so.

We have not overlooked plaintiffs' contention that defendants may not acquire title by adverse possession, with or without color of title, because G.S. 1-38 and G.S. 1-40 refer to a "person" or to "persons" and use the pronoun "he." We are of opinion and so hold that the General Assembly intended that these statutes should apply

to any legal entity, including the State of North Carolina and its agencies, capable of adversely possessing land and of acquiring title thereto.

As to paragraphs 3 and 4, the order of the court is reversed.

"Unless it is provided otherwise by a valid statute, statutes of limitation are available to the state or government when sued with its consent in its own courts." 53 C.J.S., Limitations of Actions § 15(b); 34 Am. Jur., Limitation of Actions § 392; *Cowles v. The State,* 115 N.C. 173, 20 S.E. 384. Where, as here, the State and its agencies are asserting no rights deriving from their governmental status, we are of opinion, and so decide, that rights and defenses based on statutes of limitations are available to them to the same extent they are available in like circumstances to private litigants.

With these principles in mind, we turn now to a consideration of plaintiffs' motion as related to paragraphs 5, 6 and 7.

In paragraph 5, defendants alleged that neither plaintiffs nor those under whom they claim were seized or possessed of any of the lands described in defendants' further answer and defense within twenty years before the commencement of this action.

It has been held that G.S. 1-39, on which said plea is based, and G.S. 1-42, are to be construed together. When so construed, the rule, as stated by Ashe, J., in *Johnston v. Pate,* 83 N.C. 110, is as follows: "(I)t is not necessary that a plaintiff in an action to recover land should allege in his complaint that he had possession within twenty years before action brought; for, if he establishes on the trial a legal title to the premises, he will be presumed to have been possessed thereof within the time required by law, unless it is made to appear that such premises have been held and possessed adversely to such legal title for the time prescribed by law before the commencement of such action." This statement is quoted with approval in *Conkey v. Lumber Co.,* 126 N.C. 499, 503, 36 S.E. 42, and in *Elliott v. Goss,* 250 N.C. 185, 188, 108 S.E. 2d 475. See also, *Barbee v. Edwards, supra,* where *Conkey v. Lumber Co., supra,* is cited with approval.

While its legal significance may not be determined until the development of the evidence at trial, defendants were entitled to interpose the plea set forth in paragraph 5. As to paragraph 5, the order of the court is reversed.

In paragraph 6, defendants alleged the cause of action, if any, of plaintiffs or their predecessors in title accrued more than ten years prior to the commencement of this action, and pleaded G.S. 1-56. Facts constituting a basis for this plea are not alleged.

In paragraph 7, defendants alleged the cause of action, if any, of plaintiffs or their predecessors in title, "by virtue of a trespass,"

accrued more than three years prior to the commencement of this action, and pleaded G.S. 1-52. Obviously, the complaint does not purport to allege a cause of action for trespass. Facts constituting a basis for this plea are not alleged.

"A plea of the statute of limitations, although perfect in form, is demurrable where the plea is irrelevant and constitutes no defense." *Dunn v. Dunn*, 242 N.C. 234, 238, 87 S.E. 2d 308, and cases cited. Here, the relevancy of the statutes of limitations pleaded in paragraphs 6 and 7 does not appear from any facts alleged in the pleadings or from any contention set forth in the briefs. As in *Dunn*, under similar circumstances, error in striking paragraphs 6 and 7 has not been made to appear. Hence, as to paragraphs 6 and 7, the order of the court is affirmed.

In paragraph 9, defendants alleged: "That by reason of the lapse of time and laches of the plaintiffs and their predecessors in title, and their failure to allege or assert any pretended claim to the said premises, and in permitting and allowing the defendants and their predecessors' in title to continue the possession, use and occupancy thereof openly, continuously and undisputedly for more than 20 years last past under claim or right and color of title and ownership, the plaintiffs or their predecessors or anyone claiming by, through or under them are now estopped from asserting any right, title, claim, or interest therein adverse to the defendants; and such neglect and laches are specifically pleaded in bar of plaintiffs' right to maintain this action."

The gist of paragraph 9 is that defendants have acquired title by adverse possession as alleged. No evidential facts are alleged that might be prejudicial to plaintiff. Hence, while paragraph 9 may be subject to criticism as redundant, we are of opinion that, in order to avoid confusion or uncertainty, the same disposition should be made with relation to paragraph 9 as was made with relation to paragraphs 3 and 4. Accordingly, as to paragraph 9, it is our opinion, and we so hold, that the order of the court should be and is reversed.

The result: With reference to paragraphs 3, 4, 5 and 9, the order of the lower court is reversed; and with reference to paragraphs 6 and 7, the order of the lower court is affirmed.

Reversed in part and affirmed in part.

MOORE, J., not sitting.

PLESS, J., took no part in the consideration or decision of this case.